## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALVADOR RAYMUNDO MATEO FRANCISCO, | |
| *Petitioner*, | |
| v. | Case No. |
| STEPHEN KURZDORFER, in his official capacity as Acting Field Office Director, Buffalo Field Office, Enforcement and Removal Operations, U.S. Immigration & Customs Enforcement; JOSEPH FREDEN, in his official capacity as Deputy Field Office Director of the Buffalo Federal Detention Facility; TODD LYONS, in his official capacity as Acting Director U.S. Immigration and Customs Enforcement; and KRISTI NOEM, in her official capacity as U.S. Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | **VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT** |
| *Respondents*. | |

## <u>INTRODUCTION</u>

1. This case is about Petitioner, Salvador Raymundo Mateo Francisco, ("Salvador" or "Petitioner"), a twenty (20) year-old young man with no criminal history who has lived in the United States since approximately the age of fifteen (15), and who, until his sudden and arbitrary arrest on November 11, 2025, was living with his family in Albion, New York and working pursuant to a valid work authorization. Salvador currently has Special Immigrant Juvenile Status ("SIJS") and a valid grant of deferred action that protects him from removal from the United States.

2. Salvador is an indigenous Guatemalan youth who speaks Kanjobal (a Mayan language) and Spanish. He came to the United States in 2021 as an unaccompanied child, after his mother

1

died and his father's new partner subjected him to emotional and physical abuse. He was initially placed in the custody and care of the Office of Refugee Resettlement ("ORR"), which later released him to live with his aunt, after determining that he did not present a flight risk or a danger to the community.

3. While Salvador was initially placed in removal proceedings for being in the country unlawfully, on March 30, 2022, the removal case against him was dismissed based on his pending petition for SIJS. SIJS is a humanitarian immigration protection enshrined in federal statute that is designed to afford certain immigrant children, like Salvador, who have suffered parental abuse, neglect, abandonment, or similar mistreatment the opportunity to remain safely and permanently in the United States.

4. Salvador's SIJS petition was then approved on December 6, 2022, putting him on a path to lawful permanent resident ("LPR") status in the United States. However, because of a visa backlog, young people like Salvador with SIJS must wait—often years—before they are able to apply to adjust their status. Until 2022, this waiting period put these youth at risk of deportation solely because of their unlawful status, notwithstanding the permanency their SIJS was meant to provide. So in 2022, U.S. Citizenship and Immigration Services ("USCIS") created a policy designed to protect these vulnerable youth during this wait, considering each SIJS youth for a four-year, renewable grant of deferred action, which would protect them from removal and allow them to apply to work lawfully while they waited in the backlog.

5. When USCIS granted Salvador's SIJS petition, it also found that, based on the relevant discretionary factors, he merited a grant of deferred action. This, in turn, allowed him to attend school, work legally, and build a stable life without the threat of deportation while he was waiting to adjust to LPR status. His deferred action remains valid until December 6, 2026.

6. Until last year, Salvador attended high school in Albion, New York. But when he got extremely sick and had to undergo three stomach operations, he could no longer attend school formally. Nonetheless, after overcoming his medical setbacks, Salvador continued studying for his GED. He worked for a fruit processing plant cleaning machinery and a chicken factory packing eggs and cleaning the machinery to help support himself and his aunt.

7. Salvador was studying to take the final exam he needed to obtain his GED when, on November 11, 2025, without any prior notice or warning, he was arrested and detained without a warrant by Respondents' agents as he was driving to pay his cell phone bill. Upon information and belief, these agents were not even pursuing Salvador, but rather another person—Salvador was simply a collateral arrest.

8. Despite the fact that nothing had changed since his prior release from ORR custody or since the dismissal of his removal proceedings, and despite his valid grant of SIJS and deferred action, Salvador was taken to the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, where he currently remains in civil immigration custody.

9. At the time of his arrest, Salvador was doing everything right.  He followed the rules and laws of the United States, he attended all his immigration court hearings as he was told, he applied for and received a work authorization so that he could legally work and pay taxes, and he was about to earn his GED despite struggling with serious health issues. He was waiting patiently to apply for LPR status and he had been granted protection from removal during that wait.

10. Salvador's arrest and detention are wholly unjustified. He cannot be deported because of his valid grant of deferred action, which eliminates any legitimate basis for his detention. And the government concluded long ago, when it released him from ORR custody, that he is neither a flight risk nor a danger to the community. Since then, nothing has changed that could

undermine that determination. Salvador has built deep ties to the United States, attended all immigration court dates, and has a path to LPR status. And he has never been arrested or convicted of a crime.

11. Moreover, deporting Salvador would completely undermine the purpose of the SIJS statute. Through his grant of SIJS, Salvador is on a path to LPR status, which he must remain in the United States to access. Respondents' efforts to block him from accessing the protections Congress specifically enacted for the benefit of young people like him improperly subverts Congress' intent that he be permitted to adjust status and establish a stable life in the United States.

12. The only reason Salvador appears to be in detention at all is Respondents' erroneous interpretation of the immigration detention statutes. Despite reading the statute differently for decades, Respondents now assert that all noncitizens who entered the country unlawfully are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). This novel interpretation has been overwhelmingly rejected by Article III courts throughout the United States, especially in cases where people—like Salvador—were previously released by Respondents and then re-detained without any semblance of a lawful process. *See Gomes v. Hyde*, No. 25-CV-11571, 2025 WL 1869299 (D. Mass. July 7, 2025); *Martinez v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2084238 (D. Mass. July 24, 2025); Order, *Bautista v. Santacruz Jr.*, No. 25-CV-1873 (C.D. Cal. July 28, 2025), Dkt. 14; *Rosado v. Figueroa*, No. 25-CV-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis*, --- F. Supp. 3d ---, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); Order, *Gonzalez v. Noem*, No. 25-CV-2054 (C.D. Cal. Aug. 13, 2025), Dkt. 12; *Dos Santos v. Noem*, No. 25-CV-12052, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Maldonado v. Olson*, --- F. Supp. 3d ---, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez*

4

*v. Noem*, No. 25-CV-01789, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); Order, *Aguilar*

*Vazquez v. Bondi,* No. 25-CV-3162 (D. Minn. Aug. 19, 2025), Dkt. 17; *Romero v. Hyde*, --- F.

Supp. 3d ---, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 Civ. 6373,

2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248,

2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 25-CV-02428,

2025 WL 2430025 (D. Md. Aug. 24, 2025); Order, *Ruben Benitez v. Noem*, No. 25-CV-2190

(C.D. Cal. Aug. 26, 2025), Dkt. 11; *Kostak v. Trump*, No. 25-CV-1093, 2025 WL 2472136

(W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2466670 (D.

Minn. Aug. 27, 2025); *Diaz Diaz v. Mattivelo*, No. 25-CV-12226, 2025 WL 2457610 (D. Mass.

Aug. 27, 2025); *Francisco T. v. Bondi*, --- F. Supp. 3d 2025 WL 2629839 (D. Minn. Aug. 29,

2025); *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ---, 2025 WL 2496379 (E.D. Mich. Aug. 29,

2025); Order, *Jimenez Garcia v. Kaiser*, No. 25-CV-06916 (N.D. Cal. Aug. 29, 2025), Dkt.

22; *Garcia v. Noem*, No. 25-CV-02180, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025);

*Hernandez Nieves v. Kaiser*, No. 25-CV-06921, 2025 WL 2533110 (N.D. Cal., Sept. 3, 2025);

*Doe v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); Order,

*Encarnacion v. Moniz*, No. 25-CV-12237 (D. Mass. Sept. 5, 2025), Dkt. 16; *Jimenez v. FCI*

*Berlin, Warden*, --- F. Supp. 3d ---, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Mosqueda v.*

*Noem*, No. 25-CV-02304, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Hinestroza v. Kaiser*,

No. 25-CV-07559, 2025 WL 2606983 (N.D. Cal. Sept. 9, 2025); *Sampiao v. Hyde*, --- F. Supp.

3d ---, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Guzman v. Andrews*, No. 25-CV-01015,

2025 WL 2617256 (E.D. Cal. Sept.9, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546,

2025 WL 2609425 (E.D.  Mich. Sept. 9, 2025); *Lopez Santos v. Noem*, No. 25-CV-01193,

2025 WL 2642278 (W.D. La. Sept. 11, 2025); *Salcedo Aceros v. Kaiser*, No. 25-CV-5624,

2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); Order, *Lamidi v. FCI Berlin, Warden,* No. 25-CV-297 (D.N.H. Sept. 15, 2025), Dkt. 14; *Garcia Cortes, v. Noem*, No. 25-CV- 02677, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Pablo Sequen v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2650637 (N.D. Cal. Sept. 16, 2025); *Maldonado Vazquez v. Feeley*, No. 25-CV-01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); *Velasquez Salazar v. Dedos*, No. 25-CV-00835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Hasan v. Crawford*, --- F. Supp. 3d ---, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Yumbillo v. Stamper*, No. 25-CV-00479, 2025 WL 2688160 (D. Me. Sept. 19, 2025); *Beltran Barrera v. Tindall*, No. 25-CV-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Chogllo Chafla v. Scott*, No. 25-CV-00437, 2025 WL 2688541 (D. Me. Sept. 21, 2025); *Singh v. Lewis*, No. 25-CV-96, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025); *Giron Reyes v. Lyons*, --- F. Supp. 3d ---, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Brito Barrajas v. Noem*, No. 25-CV-00322, 2025 WL 2717650 (S.D. Iowa Sept. 23, 2025); *Lepe v. Andrews*, --- F. Supp. 3d ---, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Lopez v. Hardin*, No. 25-CV-830, 2025 WL 2732717 (M.D. Fla. Sept. 25, 2025); *Roa v. Albarran, N*o. 25-CV-07802, 2025 WL 2732923 (N.D. Cal. Sept. 25, 2025); *Rivera Zumba v. Bondi*, No. 25-CV-14626, 2025 WL 2753496 (D.N.J. Sept. 26, 2025); *Valencia Zapata v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); *Alves da Silva v. U.S. Immigr. & Customs Enf 't*, No. 25-CV-284, 2025 WL 2778083 (D.N.H. Sept. 29, 2025); *Chang Barrios v. Shepley*, No. 25-CV-00406, 2025 WL 2772579 (D. Me. Sept. 29, 2025); *Inlago Tocagon v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2778023 (D. Mass. Sept. 29, 2025); *J.U. v. Maldonado*, No. 25-CV-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); *Romero-Nolasco v. McDonald*, --- F. Supp. 3d ---, 2025 WL 2778036 (D. Mass. Sept. 29, 2025); *Quispe v. Crawford*, No. 25-CV-1471, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025); *Chiliquinga*

*Yumbillo v. Stamper*, No. 25-CV-00479, 2025 WL 2783642 (D. Me. Sept. 30, 2025); Order, *Morales v. Plymouth Cnty. Corr. Facility*, No. 25- CV-12602 (D. Mass. Sept. 30, 2025), Dkt. 15; *Quispe-Ardiles v. Noem*, No. 25-CV- 01382, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); *Rodriguez v. Bostock*, --- F. Supp. 3d ---, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025); *D.S. v. Bondi*, No. 25-CV-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Ayala Casun v. Hyde*, No. 25-CV-427, 2025 WL 2806769 (D.R.I. Oct. 2, 2025); *Chanaguano Caiza v. Scott*, No. 25-CV-00500, 2025 WL 2806416 (D. Me. Oct. 2, 2025); *Guzman Alfaro v. Wamsley*, No. 25-CV-01706, 2025 WL 2822113 (W.D. Wash. Oct. 2, 2025); *Rocha v. Hyde*, No. 25-CV-12584, 2025 WL 2807692 (D. Mass. Oct. 2, 2025); *Alvarenga Matute v. Wofford*, No. 25-CV-01206, 2025 WL 2817795 (E.D. Cal. Oct. 3, 2025); *Escobar v. Hyde*, No. 25-CV-12620, 2025 WL 2823324 (D. Mass. Oct. 3, 2025); *Cordero Pelico v. Kaiser*, No. 25-CV-07286, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025); *Echevarria v. Bondi,* No. 25-CV-03252, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Guerrero Orellana v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); *Portillo Martinez v. Hyde*, No. 25-11909, 2025 WL 3152847 (D. Mass. Nov. 12, 2025); *Guerrero Orellana v. Moniz*, No. 25-CV-12664-PBS, 2025 WL 2809996, at \*5 (D. Mass. Oct. 3, 2025) (collecting cases).

13. Salvador respectfully asks this Court to hold that his arrest and his continued detention are unlawful, and to order his release from custody without restraints on his liberty beyond those that existed prior to his unlawful re-detention. He also respectfully asks that this Court order Respondents not to transfer him outside of the district for the duration of this proceeding.

**PARTIES**

14. Petitioner Salvador Raymundo Mateo Francisco is a 20-year-old indigenous Guatemalan national who entered the United States as an unaccompanied child and has been residing here since the age of 15. Prior to his unnoticed arrest and detention, Salvador was living with his aunt in Albion, New York and working with a valid work authorization issued by the U.S. government. Salvador has an approved SIJS petition and a grant of deferred action valid through December 6, 2026.

15. Respondent Stephen Kurzdorfer is sued in his official capacity as Acting Field Office Director, Buffalo Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement ("ICE"). Respondent Kurzdorfer is a legal custodian of Salvador.

16. Respondent Joseph Freden is sued in his official capacity as Deputy Field Office Director of the Buffalo Federal Detention Facility. Respondent Freden is a legal custodian of Salvador.

17. Respondent Todd Lyons is sued in his official capacity as Acting Director of ICE. As the Acting Director of ICE, Respondent Lyons is a legal custodian of Salvador.

18. Respondent Kristi Noem is sued in her official capacity as Secretary of Homeland Security. As the head of the Department of Homeland Security ("DHS"), the agency tasked with enforcing immigration laws, Secretary Noem is Salvador's ultimate legal custodian.

19. Respondent DHS is a cabinet-level department of the Executive Branch of the federal government and is an "agency" within the meaning of 5 U.S.C. § 551(f)(1). Its components include ICE and USCIS.

20. Respondent ICE is a component of DHS that enforces immigration laws and oversees the arrest, detention, and removal of noncitizens.

## JURISDICTION AND VENUE

21. This Court has jurisdiction under the U.S. Constitution. U.S. Const. art. I § 9, cl. 2 ("The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require.").

22. The Court also has jurisdiction under 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651 (the All-Writs Act); 28 U.S.C. § 2241 (habeas corpus); and 5 U.S.C. § 701 (the Administrative Procedure Act).

23. This Court has additional remedial authority under 28 U.S.C. §§ 2201-02 (the Declaratory Judgment Act), to grant injunctive and declaratory relief.

24. Venue is proper in the Western District of New York under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this district. Venue is also proper under 28 U.S.C. § 2241(d) because Salvador is detained at a facility within this district.

25. Administrative exhaustion is unnecessary because it would be futile.

## RELEVANT FACTS AND PROCEDURAL HISTORY

26. Salvador came to the United States for safety when he was 15 years old, on February 5, 2021, after his mother died and his father's new partner subjected him to physical and emotional abuse. DHS officials determined that he was an "unaccompanied alien child" ("UC") pursuant to 6 U.S.C. § 279(g)(2) and immediately transferred him to the custody of ORR, within the Department of Health and Human Services ("HHS"), pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"). *See generally,* 8 U.S.C. § 1232.

27. As a UC, Salvador's initial care and custody were entrusted to ORR and the TVPRA governed his detention and release. Among other things, the TVPRA requires that all UCs be placed in the least restrictive setting and favors their release from ORR custody to a "sponsor" if they

present no risk of flight or danger to the community. 8 U.S.C. § 1232(c)(2)(A), (c)(3)(A). Pursuant to that statutory framework, ORR determined that Salvador should be released to a sponsor, his aunt, under a sponsor care agreement.[1].

28. The TVPRA also requires that, if DHS wishes to pursue the removal of UCs, they be placed in full removal proceedings under Section 240 of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1232(a)(5)(D)(i). Accordingly, Salvador was issued a Notice to Appear ("NTA"), charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without admission or parole and ordering him to appear in Buffalo Immigration Court for Section 240 proceedings. *See* Exh. 1, 2021 NTA. Salvador diligently attended and participated in those proceedings, never missing a court date.

29. After obtaining *pro bono* legal services, Salvador, by and through his attorneys, applied for SIJS. First, on March 7, 2022, Orleans County Surrogate Court issued a Special Findings Order determining that Salvador had been abandoned and neglected by his father in Guatemala and that his mother was deceased, and that it was in his best interests to remain in the United States. The court therefore appointed Salvador's aunt to be his legal guardian.

30. Salvador then was able to and did submit a SIJS petition to USCIS on March 17, 2022. DHS moved to dismiss Salvador's removal proceedings based on the pending SIJ petition. *See* Exh. 2, DHS Motion to Dismiss Proceedings.  On March 30, 2022, the Immigration Judge overseeing Salvador's removal proceedings granted DHS's motion to dismiss. *See* Exh. 3, Dismissal Order.

---

[1] *See also* ORR Unaccompanied Alien Children Bureau Policy Guide, Section 2.1, https://acf.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-section-2.

31. USCIS approved Salvador's SIJS petition on December 6, 2022, and concurrently granted him deferred action for a four-year period, until December 6, 2026. *See* Exh. 4, Approved SIJS Petition with Grant of Deferred Action.

32. Salvador's deferred action protects him from removal while he waits for a visa to become available allowing him to apply to adjust to LPR status. *See id*. It also allowed him to apply for employment authorization, which he obtained so that he could help support himself and his family while he pursued his studies.

33. Salvador was attending high school in Albion until last year, when he became severely ill and had to undergo three stomach operations. Unable to continue formal studies, he decided to pursue a GED, spending his days studying and his nights working at a chicken factory to help his aunt pay the bills.

34. Salvador was preparing to take the last exam he needed to pass to obtain his GED when his bright future was suddenly shattered. On November 11, 2025, Salvador was arrested and detained without any notice or warning while he was driving to pay his cell phone bill in Batavia. Upon information and belief, the DHS officers who arrested him were looking for a passenger in his vehicle—not Salvador—and they had no warrant for Salvador's arrest. Salvador was not accused of violating any vehicle and traffic law. Salvador did not run or try to evade the officers. Nonetheless, they arrested him without a warrant and transferred him to BFDF.

35. Shortly thereafter, DHS unsuccessfully filed a form I-830 in an apparent attempt to notify the Court of Salvador's detention and transfer the dismissed removal proceedings from the Buffalo Immigration Court to the Batavia Immigration Court.  Exh. 5, Notice of Rejected Filing.  The

filing was rejected because there is no pending case. *See id.* At this time, the proceedings remain dismissed and there is no pending removal case against Salvador.

36. According to the USCIS November 2025 Visa Bulletin, USCIS is currently allowing individuals with SIJS and a priority date of February 15, 2021 to apply to adjust status to become LPRs.[2] Salvador's priority date is March 17, 2022. Exh. 4. Therefore, it is anticipated that Salvador will be eligible to apply to adjust his status in the foreseeable future. In the meantime, he is protected from removal by his valid grant of deferred action. Nonetheless, the government seeks to do an end run around the lawful process that Salvador has followed by unlawfully arresting him, detaining him at BFDF, and pursuing his removal.

37. Salvador is now being deprived of his liberty and separated from his family, despite the fact that he cannot be removed and despite the fact that nothing has changed since the government found he does not need to be detained (or even in removal proceedings) years ago.

## LEGAL FRAMEWORK

### A. The TVPRA Governs the Detention and Release of UCs

38. Congress has recognized that noncitizen youth who come to the United States without a parent are especially vulnerable and must receive additional protections. Therefore, through the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), Congress set forth special protections for UCs. 8 U.S.C. § 1232. A UC is defined as a child who (A) lacks lawful immigration status in the United States; (B) is under the age of 18; and (C) has no parent or legal guardian in the United States, or no such parent or legal guardian is available to provide care and physical custody. 6 U.S.C. § 279(g)(2).

---

[2] USCIS, Visa Bulletin for October 2025, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2026/visa-bulletin-for-october-2025.html (SIJS is included under the employment-based visa category, 4th).

39. Through the TVPRA, Congress amended the INA to provide that UCs can only be removed through Section 240 removal proceedings. 8 U.S.C. § 1232(a)(5)(D). Therefore, 8 U.S.C. § 1229a exclusively governs removal proceedings of UCs and is the only process for determining whether they can stay in the United States or can be removed. 8 U.S.C. § 1229a(3).

40. The TVPRA requires that the HHS, through ORR, manage the care and custody of UCs. 8 U.S.C. § 1232(c)(2). The statute requires ORR to place the UC "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). In considering this, the statute directs the government to "consider danger to self, danger to the community, and risk of flight." *Id; see also* 6 U.S.C. § 279(b)(2)(A). ORR may release the UC to a "sponsor" who already lives in the country but was not with the UC when DHS apprehended them—often a parent or relative—so long as these and other criteria are satisfied. *Id.*; *see also* 45 C.F.R. § 410.1201.

**B.  SIJS Provides a Pathway to Permanent Status for Certain Vulnerable Young People**

41. Separate and apart from UCs, in 1990, Congress created SIJS to protect another category of vulnerable immigrant children and provide them a pathway to citizenship.  Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990) (amending various sections of the INA); Special Immigrant Status, 58 Fed. Reg. 42843, 43844 (Aug. 12, 1993) ("This rule alleviates hardships experienced by some dependents of United States juvenile courts by providing qualified [noncitizens] with the opportunity to apply for special immigrant classification and lawful permanent resident status, with [the] possibility of becoming citizens of the United States in the future."). Since 1990, Congress has amended the INA multiple times to expand the protections of SIJS, most recently in 2008, through the TVPRA, Pub. L. 110-457, § 235(d), 122 Stat. 5044 (2008).

42. To be granted SIJS, youths must first "satisfy[] a set of rigorous, congressionally defined eligibility criteria." *Osorio-Martinez v. U.S. Att'y Gen*., 893 F.3d 153, 163 (3d Cir. 2018). Specifically, the INA provides that those eligible for SIJS designation, as relevant here, are noncitizen youth who are present in the United States; who have been declared dependent on a state juvenile court; who cannot be reunified with one or more parents because of abuse, neglect, or abandonment; and for whom it has been determined that it is not in their best interest to return to their country of origin. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c).

43. Crucially, a noncitizen youth is eligible for SIJS only if he or she is "present in the United States." 8 U.S.C. § 1101(a)(27)(J) (emphasis added). This requirement makes perfect sense in light of the purpose of the SIJS statute. SIJS is predicated on a state court finding that the youth cannot be safely reunited with one or both parents, nor safely sent back to their country of origin. The design of this program, then, "show[s] a congressional intent to assist a limited group of abused children to remain safely in the country with a means to apply for LPR status." *Garcia v. Holder*, 659 F.3d 1261, 1271 (9th Cir. 2011) (abrogated on other grounds).

44. Youth can apply for SIJS upon receipt of a state court order finding they cannot be safely reunited with parent(s) nor safely sent back to their country of origin. The application process includes submitting a Form I-360 SIJS Petition to USCIS, along with the predicate state court order and other supporting evidence. *See* 8 C.F.R. § 204.11(b). USCIS then considers the application and supporting documentation to determine whether to exercise its statutory "consent function" to approve the petition. *See* 8 U.S.C. § 1101(a)(27)(J)(iii). By exercising its statutory consent function to grant SIJS, the agency recognizes the state court's determinations, including that the child's return to their country of origin would be contrary to their best interests. 8 U.S.C. § 1101(a)(27)(J)(iii).

14

45. The main benefit of SIJS—and indeed, its core purpose—is that it confers on vulnerable young people like Salvador the right to seek LPR status while remaining in the United States, through a process called adjustment of status. *See* 8 U.S.C. 1255(h).

46. To facilitate this process, Congress removed numerous barriers to adjustment of status for SIJS beneficiaries through amendments to the SIJS provisions in 1991 and again in 2008. For example, SIJS youth are "deemed . . . to have been paroled into the United States" for the purposes of adjustment of status. 8 U.S.C. § 1255(h)(1). Further, Congress exempted SIJS youth from many common inadmissibility grounds and created a generous waiver of many of the non-exempted inadmissibility grounds. 8 U.S.C. § 1255(h)(2). And Congress explicitly provided that certain grounds for removal "shall not apply to a special immigrant described in section 1101(a)(27)(J) of this title [the SIJS statute] based upon circumstances that existed before the date the [noncitizen] was provided such special immigrant status." 8 U.S.C. § 1227(c).

### C. SIJS Deferred Action Protects SIJS Youth from Removal While They Wait for a Visa

47. Although SIJS renders youth eligible to apply for adjustment, they can only do so when a visa is immediately available to them. 8 U.S.C. § 1255(h). However, there is an annual limit on visas available to SIJS beneficiaries. 8 U.S.C. § 1153(b)(4). And since 2016, the number of SIJS beneficiaries has surpassed the supply of available visas for most countries, leaving what has been estimated to be more than 100,000 young people in a backlog, waiting to apply for a green card.[3]

---

[3] *See* R. Davidson et. al, False Hopes: Over 100,000 Immigrant Youth Trapped in the SIJS Backlog (2023), https://static1.squarespace.com/static/5fe8d735a897d33f7e7054cd/t/656a48a3f02597441a4cbf95/1701464285675/2023-false-hopes-report.pdf.

48. Despite the immediate unavailability of visas, waitlisted SIJS beneficiaries are the same vulnerable young people that the SIJS statute was designed to protect. The fact that no visa is currently available because a numerical limit has been reached changes nothing about their eligibility determination by USCIS, or Congress's intent that they be afforded a pathway to LPR status and, eventually, citizenship. These are the same individuals whom state courts have determined cannot safely be reunited with their parent(s) or returned to their home country.

49. Taken together, the structure of the SIJS program—including the requirement that recipients remain in the United States to move forward in the process, the grant of parole for the purpose of adjustment, and the waiver of grounds of inadmissibility and removability—evinces Congress' intent that SIJS recipients remain safely in the United States until they can adjust to become LPRs. And given that they are only "a hair's breadth from being able to adjust their status" and have a "substantial legal relationship" with the United States, these individuals have been recognized as enjoying meaningful constitutional due process rights. *Osorio*, 893 F. 3d at 173-75.

50. Nonetheless, DHS has taken the position that SIJS youth in the visa backlog remain subject to removal, including simply for their lack of lawful immigration status in the United States, while they wait for the ability to apply for a green card. So in March 2022, to address the harms being caused by the SIJS visa backlog, USCIS announced that all young people granted SIJS would also be considered for a discretionary grant of deferred action, meaning that they would be protected from deportation while waiting for a visa to become available. In enacting this policy, USCIS acknowledged that "Congress likely did not envision that SIJ petitioners would have to wait years before a visa became available. . .."  USCIS Policy Alert, PA-2022-10, "Special Immigrant Juvenile Classification and Deferred Action" (March 7, 2022),

https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf (hereinafter "2022 USCIS Policy Alert").

51. Deferred action is an act of prosecutorial discretion that prevents the removal of a noncitizen from the United States for a certain period of time. USCIS Policy Manual as of April 18, 2025, vol. 6, pt. J, ch. 4, https://web.archive.org/web/20250418205752/https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4; *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) ("*AADC*"); *DHS v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1911 (2020).

52. In the case of SIJS recipients awaiting visas, USCIS granted deferred action for a period of four years. 2022 USCIS Policy Alert at 2. Individuals granted deferred action are also eligible to apply for employment authorization under 8 C.F.R. § 274a.12(c)(14). *Id.*

53. In June 2025, USCIS rescinded the SIJS deferred action policy, deciding to no longer consider granting deferred action to SIJS youth waiting to apply for a green card.[4] However, this policy change had no impact on SIJS beneficiaries, like Salvador, who had already received deferred action. *See* USCIS Policy Alert, PA-2025-07, "Special Immigrant Juvenile Classification and Deferred Action" 2 (June 6, 2025), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250606-SIJDeferredAction.pdf (hereinafter "2025 USCIS Policy Alert"). Indeed, USCIS explicitly provided that noncitizens "with current deferred action based on their SIJ classification will generally retain this deferred action . . . until the current validity periods expire." *Id.*

**D. Salvador's Detention Violates His Right to Substantive Due Process Because He Is Neither a Flight Risk Nor a Danger to His Community**

---

[4] A proposed class action challenging this rescission as arbitrary and capricious, among other claims, is currently pending before the U.S. District Court for the Eastern District of New York. *A.C.R. et al. v. Noem et al.*, No. 1:25-cv-3962.

54. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Noncitizens unquestionably have a substantive liberty interest to be free from detention. Because "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception," the government may imprison people as a preventive measure only within strict limits. *Foucha v. Louisiana*, 504 U.S. 71, 83 (1992) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

55. Immigration detention is civil and must "bear[] a reasonable relation to the purpose for which the individual [is] [detained]" so that it remains "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690 (cleaned up); *see also Schall v. Martin*, 467 U.S. 253, 264-69 (1984) (finding detention must be a proportional—not excessive—response to a legitimate state objective).

56. Courts have identified only two legitimate purposes for immigration detention: mitigating flight risk pending removal and preventing danger to the community. *See Zadvydas,* 533 U.S. at 690-91; *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020); *Faure v. Decker*, No. 15-CV-5128, 2015 WL 6143801, at *3 (S.D.N.Y. Oct. 19, 2015) (ordering release or a bond hearing where there was "no evidence" that the habeas petitioner "poses a danger to the public or would flee during the pendency of the removal proceedings").

57. Neither purpose is served by Salvador's detention. First, Salvador cannot be removed because he has a valid grant of deferred action. *See AADC*, 525 U.S. at 484; *Regents*, 140 S. Ct. at 1911; And if a person cannot actually be removed, "preventing flight" is a "weak or nonexistent" justification for their detention. *Zadvydas,* 533 U.S. at 690; *cf. Phan v. Reno*, 56 F. Supp. 2d 1149, 1156 (W.D. Wash. 1999) ("Detention by the INS can be lawful only in aid of deportation."). Detention of such an individual for community safety, in turn, is only

permissible "when limited to specially dangerous individuals and subject to strong procedural protections." *Id*. at 691. Accordingly, the fact that Salvador cannot be removed eliminates any justification of flight risk, and his lack of criminal record eliminates any suggestion of special danger. This necessitates his release. *See Guerra Leon v. Noem*, No. 25-01495 (W.D. La Oct. 30, 2025), https://storage.courtlistener.com/recap/gov.uscourts. vaed.582272/gov. uscourts.vaed.582272.12.0.pdf (confirming that SIJS deferred action recipient could not be removed and thus could not be detained despite having a final order of removal); *Primero v. Mattivelo*, No. 1:25-cv-11442-IT, 1:25-cv-11442-IT D. Mass. July 9, 2025) (similar).

58. Second, Respondents have not otherwise made any claim that Salvador presents a flight risk or a danger to the community, nor could they. When Salvador was previously released from ORR custody in 2021, the government came to precisely the opposite conclusion. *See* 8 U.S.C. § 1232(c)(2); 6 U.S.C. § 279(b)(2)(A); *see also Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1177 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (confirming that release to a sponsor "reflects a determination by the federal government that the minor is neither dangerous nor a flight risk"). Then, it decided that Salvador did not even need to be in removal proceedings at all, and filed a motion to dismiss those proceedings because of his pending SIJS application—yet another indication that it did not believe him to present any risk of flight or danger. *See* Exh. 3. Since then, Salvador's ties to this country have only grown stronger. He has not only built his entire life here, but he has been granted SIJS, Exh. 4, which gives him a path to citizenship and safe and meaningful future. *See Osorio*, 893 F. 3d at 173-75. And he remains without any criminal record.

59. Accordingly, the government is not detaining Salvador to serve its legitimate interests in protecting against danger or flight risk. Because detention on that basis bears no "reasonable

relation" to the government's interests in preventing flight and danger, *Jackson v. Indiana*, 406

U.S. 715, 738 (1972), this Court should order his release.

**E.  Salvador's Re-Arrest and Detention Without an Opportunity to Seek Release from a Neutral Decisionmaker Violates His Right to Procedural Due Process and Necessitates His Release**

60. Even "[w]hen government action depriving a person of life, liberty, or property survives

substantive due process scrutiny, it must still be implemented in a fair manner." *Salerno*, 481

U.S. at 746. *See also, Ceesay v. Kurzdorfer*, No. 25-CV-267-LJV, 2025 WL 1284720 at *10

(W.D.N.Y. May 2, 2025); *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 362-64, 373 (S.D.N.Y.

2019) (finding the detention of a noncitizen without written notice of the reinstatement of a

removal order violated procedural due process and therefore ordering his release and enjoining

the government "from attempting to detain Petitioner, while the outcome of his immigration

proceedings are pending, so long as he is ably cooperating and participating in his

proceeding"); *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726 at *11 (S.D.N.Y. June

12, 2018).

61. "The Supreme Court long ago held that the Fifth Amendment entitles noncitizens to due

process in removal proceedings." *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024). The

three-factor test articulated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976)

provides the relevant framework "to determine what process is due to noncitizens in removal

proceedings," *Black*, 103 F.4th at 147 (collecting cases), and confirms his entitlement to a

hearing. The *Mathews* factors are: (1) "the private interest that will be affected by the official

action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used,

and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the

Government's interest, including the function involved and the fiscal and administrative

burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424
U.S. at 335.

62. The first *Mathews* factor weighs heavily in Salvador's favor. The Second Circuit has
repeatedly held in challenges to immigration detention that "the private interest affected by the
official action is the most significant liberty interest there is—the interest in being free from
imprisonment." *Black*, 103 F.4th at 151 (quoting *Velasco Lopez*, 978 F.3d at 851). Salvador's
ongoing detention directly and substantially implicates this "most significant liberty interest .
. . . '[C]ase after case instructs us that in this country liberty is the norm and detention 'is the
carefully limited exception.'"" *Id*. (quoting *Velasco Lopez*, 978 F.3d at 851 and *United States
v. Salerno*, 481 U.S. 739, 755 (1987) (cleaned up)). Like the petitioner in *Velasco Lopez*, the
deprivation Salvador is experiencing "was not the result of a criminal adjudication." 978 F.3d
at 851. Nor is it the result of any flight risk or danger. *See supra*.

63. Salvador also has a particularly strong liberty interest in light of (1) his prior release as a UC
and (2) his valid grant of SIJS. Because he was previously released from custody and not even
subject to government monitoring, he possessed a weighty liberty interest in avoiding re-
detention. *See Young v. Harper*, 520 U.S. 143, 146-47 (1997); *Gagnon v. Scarpelli*, 411 U.S.
778, 781-82 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 482-483 (1972). In *Morrissey*, the
Supreme Court examined the "nature of the interest" that a parolee has in "his continued
liberty." 408 U.S. at 481-82. The Court noted that, "subject to the conditions of his parole, [a
parolee] can be gainfully employed and is free to be with family and friends and to form the
other enduring attachments of normal life." *Id*. at 482. The Court further highlighted that "the
parolee has relied on at least an implicit promise that parole will be revoked only if he fails to
live up to the parole conditions." *Id*. The Court explained that "the liberty of a parolee, although

21

indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others." *Id*.; *see also Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017) ("[A] person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated.").

64. Numerous courts have since found a similar liberty interest to be held by noncitizens released from detention on bond, and have noted that this interest only "grows over time." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *5 (N.D. Cal. July 17, 2025); *see also Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021); *Doe v. Becerra*, No. 25-cv-00647-DJC-DMC, 2025 WL 691664, at *5 (E.D. Cal. March 5, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

65. Of course, the interest in remaining free is even stronger in a case, like Salvador's, where the government released him from custody without even the need for a bond. *See Garcia Domingo v. Castro*, No. 1:25-CV-00979-DHU-GJF, 2025 WL 2941217, at *2 (D.N.M. Oct. 15, 2025) (finding that UC's release created protected liberty interest); *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025) (same); *Contreras Maldonado v. Cabezas*, No. 25–13004, 2025 WL 2985256 (D.N.J. Oct. 23, 2025).

66. Salvador's grant of SIJS only further strengthens his liberty interest. To be approved for SIJS and deferred action, Salvador had to meet "rigorous eligibility criteria" and show that he merited a favorable exercise of discretion. *See Osorio*, 893 F.3d at 168; 2022 USCIS Policy Alert. He was promised that, if he met those requirements, he would be given a meaningful path to LPR status, and eventually citizenship, in this country. *Osorio*, 893 F.3d at 168. That

came with the expectation that he could build a life here without risking arbitrary arrest, detention, and removal that would strip him of the very permanency Congress created SIJS to provide vulnerable youth like him. As a result, he has "developed the 'substantial connections with this country' that 'go with permanent residence.'" *Id.* (cleaned up). And he has an interest in maintaining the life he has built, including his liberty. *See Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *12 (W.D. Tex. Oct. 2, 2025) (finding that Deferred Action for Childhood Arrivals ("DACA") recipients, who like SIJS recipients are permitted "to live, study, and work in the United States without fear of arrest or deportation," necessarily acquire a liberty interest); *Gamez Lira v. Noem*, No. 25-cv-00855-WJ-KK, 2025 WL 2581710, at *3 (D. N.M. Sept. 5, 2025) (finding petitioner "likely possessed a protectable liberty interest after living in the United States for ten years with DACA").

67. As for the second *Mathews* factor, the erroneous deprivation of Salvador's liberty is the direct result of the insufficient safeguards and procedures used to initiate and continue his detention. The government purports to detain Salvador without review under the authority of 8 U.S.C. § 1225(b). Section 1225(b), like the mandatory detention at issue in *Black*, "include[s] no mechanism for a detainee's release, nor for individualized review of the need for detention." 103 F.4th at 152. Such a lack of "procedural protections . . . markedly increase[d] the risk of an erroneous deprivation of Petitioners' private liberty interests." *Id.* When evaluating the second *Mathews* prong, "[t]he only interest to be considered . . . is that of the detained individuals—not the government." *Black*, 103 F.4th at 152.

68. The fact that the government has already decided Salvador did not present a flight risk or danger, and even moved to dismiss his removal proceedings, is "irreconcilable with the decision to re-arrest him, absent changed circumstances." *Lopez*, 2018 WL 2932726, at *11.

In *Lopez,* the court held that due to the lack of process prior to the petitioner's re-arrest, "the risk of erroneous deprivation of Mr. Lopez's liberty interest is manifest." *Id.* As such, "Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment." *Id*. at 12. Indeed, courts across the country have held that individuals in Salvador's position must be given meaningful pre-deprivation process before they can be re-detained. *See supra* (collecting general re-detention cases); *Garcia Domingo*, 2025 WL 2941217, at *4 (UC re-detention); *R.D.T.M.*, 2025 WL 2686866, at *5 (same); *see also Guillermo M.R.*, 2025 WL 1983677, at *7 (noting that the court could not "identify any other context in which government agents could permissibly take someone who has been released by a judge, lock up that person, and have no hearing either beforehand or promptly thereafter"); *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (noting that the Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property") (emphasis in original); *Mata Velasquez*, 2025 WL 1953796 at **11-16.

69. The third *Mathews* prong—the public interest—also weighs in Salvador's favor. As explained *supra*, the government has no legitimate interest in detaining anyone who cannot be deported and is not a flight risk or a danger to the community. *Zadvydas*, 533 U.S. at 690; *see also Santiago*, 2025 WL 2792588, at *12 (finding government had no legitimate interest in detaining individual with deferred action). The government already determined that Salvador was not either, and it has not indicated that there are any changed circumstances that could justify his detention. Moreover, "there is no public interest in the perpetuation of unlawful agency action," *R.J. Reynolds Vapor Co. v. Food & Drug Admin*., 65 F.4th 182, 195 (5th Cir. 2023), but a "substantial public interest 'in having governmental agencies abide by the federal

24

laws that govern their existence and operations,'" *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). It also bears noting that the "fiscal and administrative burdens" that would be imposed by Salvador's release from custody, unless and until a pre-deprivation hearing is provided, are nonexistent in this case. *See Mathews*, 424 U.S. at 334-35.

70. Ultimately, then, because "[t]he release of [Salvador] to his aunt was pursuant to a process that involved a determination that he was neither a danger to himself or others and that it was appropriate for him to reside with her. Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment." *Lopez*, 2018 WL 2932726, at *12.

### F. Respondents Violated Salvador's Fourth Amendment Rights

71. It is unreasonable under the Fourth Amendment to rearrest a person who has been released from custody based on the same charge that supported the earlier arrest (particularly when the proceedings were dismissed and the basis for the dismissal remains unchanged). The Fourth Amendment protects the right of the people to be secure in their persons against unreasonable seizures. U.S. Const. Amend. IV. "It is axiomatic that seizures have purposes." *Williams v. Dart*, 967 F.3d 625, 634 (7th Cir. 2020). "When those purposes are spent, further seizure is unreasonable." *Id.* Any seizure must be supported by probable cause, which is "strictly tied to and justified by the circumstances which rendered [the initiation of the seizure] permissible." *Terry v. Ohio*, 392 U.S. 1, 18 (1968) (quoting *Warden v. Hayden*, 387 U.S. 294, 310 (1967) (Fortas, J., concurring)); *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). When the purpose of a seizure is accomplished, "[f]urther seizure requires a court order or new cause" as "the original probable cause determination is no justification." *Williams*, 967 F.3d at 634.

72. This requirement "guards against precipitate rearrest." *Carlson v. Landon*, 342 U.S. 524, 546-47 (1952). "Arrest ensures that a suspect appears to answer charges and does not continue a crime, and it safeguards evidence and enables officers to conduct an in-custody investigation." *Virginia v. Moore*, 553 U.S. 164, 173 (2008); *Albright v. Oliver*, 510 U.S. 266, 278 (1994) (same) (Ginsburg, J., concurring); *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) (same). When an individual is released on bond, bail, parole, or their own recognizance pending the result of their proceedings, the purpose of their prior arrest has been accomplished. *Williams*, 967 F.3d at 634. As a result, any probable cause justifying the prior arrest is extinguished, and they cannot be rearrested absent changed circumstances. *See Carlson*, 342 U.S. at 546-47; *United States ex rel. Heikkinen v. Gordon*, 190 F.2d 16, 19 (8th Cir. 1951); *United States v. Holmes*, 452 F.2d 249, 260-61 (7th Cir. 1971); *United States v. Swims Under*, 990 F.2d 1265 (table), 1993 WL 103768, at *2 (9th Cir. 1993); cf. *Saravia*, 280 F. Supp. 3d at 1176 ("Once a noncitizen has been released, the law prohibits federal agents from re-arresting him merely because he is subject to removal proceedings.").

73. The fact that Salvador was arrested without a warrant also independently violated his Fourth Amendment and statutory rights. As a general matter, the Fourth Amendment requires that all arrests entail a neutral, judicial determination of probable cause. *See Gerstein*, 420 U.S. at 114. That neutral, judicial determination can occur either before the arrest, in the form of a warrant, or promptly afterward, in the form of a prompt judicial probable cause determination. *See id*. Arrest and detention of a person, including of a noncitizen, absent a neutral, judicial determination of probable cause violates the Fourth Amendment of the Constitution. *Id.*; *see also Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991). This determination must occur

within 48 hours of detention, which includes weekends, unless there is a bona fide emergency or other extraordinary circumstance. *See Riverside*, 500 U.S. at 57.

74. Congress enacted a strong preference that immigration arrests be based on warrants. *See Arizona v. U.S.*, 567 U.S. 387, 407–08 (2012). The INA thus provides immigration agents with only limited authority to conduct warrantless arrests. 8 U.S.C. § 1357(a)(2). Specifically, an officer must have "reason to believe" the person is violating the immigration laws and that the person "is likely to escape before a warrant can be obtained." *Id*. Federal regulations track the strict limitations on warrantless arrests. *See* 8 C.F.R. § 287.8(c)(2)(ii).

75. These regulations also provide that, if a noncitizen is arrested without a warrant, the arresting immigration officer must make a custody determination within 48 hours of the arrest, unless there is "an emergency or other extraordinary circumstance" that requires "an additional reasonable period of time" to make the custody determination. 8 C.F.R. § 287.3(d). During that custody determination, for individuals detained pursuant to 8 U.S.C. § 1226(a), the immigration officer must make findings as to whether "release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). *Cf. Zadvydas*, 533 U.S. at 690-92 (stating that preventing danger to the community or preventing flight prior to removal are the only two legitimate objectives of immigration detention).

76. Here, at the moment of seizure, Salvador (a) had valid SIJS and deferred action, which provided him a path to LPR status, (b) was living at a stable home address, of which the government was fully aware, and (c) had been in the United States for four years and built strong ties to his community. Moreover, Salvador fully complied with the ICE officers and in no way tried to disobey or flee. Therefore, no officer could have held a reasonable belief that

Salvador was both present in violation of the immigration laws and that he was likely to escape before a warrant could be obtained. *See* 8 U.S.C. § 1357(a)(2).

77. Without a statutory basis to arrest, the Government is required under the Fourth Amendment to secure a prompt judicial probable cause determination to continue holding Salvador. *Gerstein*, 420 U.S. at 114; *McLaughlin*, 500 U.S. at 56–57. He received no such judicial determination, yet his detention continued well beyond 48 hours, rendering it presumptively unconstitutional. The Government cannot salvage this seizure by invoking generalized immigration enforcement interests. The Fourth Amendment's reasonableness inquiry is fact-specific and demands individualized justification for both the arrest and the extended detention. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 882–84 (1975); *Gerstein*, 420 U.S. at 114. Moreover, Respondents themselves did not even comply with their own regulations and make a custody determination that Salvador is dangerous or a flight risk within 48 hours of arrest, and no emergency or extraordinary circumstances justifies this delay. 8 C.F.R. § 287.3(d).

78. Ultimately, Salvador was a 20-year-old with valid SIJS and deferred action, who had previously been found not to present a danger or a flight risk, whose removal proceedings had been dismissed, and who has a pathway to permanent status in this country. In light of his unlawful warrantless arrest and lack of any probable cause determination or even custody review justifying his detention, Salvador should be released. *See, e.g.*, *Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099, at *18 (D. Ariz. Aug. 11, 2025), *report and rec. adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025) (finding Fourth Amendment violation under similar circumstances and

28

ordering release); *Gamez Lira v. Noem*, No. 1:25-CV-00855-WJ-KK, 2025 WL 2581710, at
*4 (D.N.M. Sept. 5, 2025) (similar, granting temporary restraining order).

### G. Salvador's Detention Is Not Governed by 8 U.S.C. § 1225(b)(2)(A)

79. "[P]reoccupation with technical concerns over 1225 processing versus 1226 processing for
detention only exalts form over substance insofar as the Due Process Clause, writ large, is
concerned," especially where, as here, the case involves "a prolonged period of [presence in
the United States]." *Rodrigues De Oliveira v. Joyce*, No. 2:25-cv-00291, 2025 WL 1826118,
at *5 (D. Me. July 2, 2025). Nonetheless, the government's position that Salvador is
mandatorily detained under 8 U.S.C. § 1225(b)(2)(A) is wholly erroneous.

80. The INA prescribes three basic forms of detention for most noncitizens in removal
proceedings. First, 8 U.S.C. § 1226 "authorizes the Government to detain certain [noncitizens'
already in the country pending the outcome of [Section 240] removal proceedings." *Jennings
v. Rodriguez*, 583 U.S. 281, 289 (2018). Individuals detained under Section 1226(a) are
generally entitled to a bond hearing at the outset of their detention. *See* 8 C.F.R. §§ 1003.19(a),
1236.1(d). However, noncitizens who have been arrested, charged with, or convicted of certain
crimes are subject to mandatory detention under Section 1226(c). *See* 8 U.S.C. § 1226(c).

81. Second, the INA provides for mandatory detention of two groups of noncitizens encountered
"at the Nation's borders and ports of entry." *Jennings*, 583 U.S. at 288. The first group consists,
generally, of those who are subject to expedited removal for being apprehended upon arrival
near the border or for being unable to show that they have been physically present in the United
States for more than two years until a determination has been made as to whether they have a
credible fear of persecution. 8 U.S.C. § 1225(b)(1). Notably, UCs are not subject to expedited
removal. 8 U.S.C. § 1232(a)(5). The second group subject to mandatory detention consists of

anyone alleged to be an "applicant for admission" who is "seeking admission" and whom an "examining immigration officer determines . . . is not clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A).

82. Last, the INA provides for detention of noncitizens who final orders of removal. *See* 8 U.S.C. § 1231.

83. While, upon information and belief, the government purports to detain Salvador under § 1225(b)(2)(A), *see Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), that provision does not apply to Salvador. First, Salvador is not "seeking admission" to the United States—he has been in this country for the past four years and built a life here. *See Portillo Martinez v. Hyde*, No. 25-11909, 2025 WL 3152847 at *8 (D. Mass. Nov. 12, 2025) (finding that a UC whose entry into the United States and release to guardian was facilitated by DHS, and who was permitted to remain in the United States for nine years after that entry, could not be found to "arriving" and therefore "section 1225 cannot apply"); *Alvarez Ortiz v. Freden*, No. 25-CV-960-LJV, 2025 WL 3085032 at *7-10 (W.D.N.Y. Nov. 4, 2025) (finding that "section 1225(b)(2) applies only to noncitizens actively 'seeking admission' at or near the border or who have been paroled" based on Supreme Court jurisprudence, longstanding agency interpretation, and canons of statutory construction).

84. Second, the fact Salvador has been granted SIJS only confirms that his detention cannot be governed by § 1225(b)(2)(A). An award of SIJS confirms that a noncitizen is an "alien present in the United States," not one "seeking admission." *See Rodriguez v. Perry*, 747 F. Supp. 3d 911, 916 (E.D. Va. 2024) (concluding that SIJS recipient who had entered the United States years earlier as an "arriving alien" was detained under § 1226, not § 1225(b)(2)(A))..
Addressing whether SIJS beneficiaries are properly detained under 8 U.S.C. §§ 1225 or 1226,

30

the *Rodriguez* court ruled that, because "the INA defines a 'special immigrant' as 'an immigrant who is present in the United States,'" a noncitizen's "SIJ status weighs in favor of finding that . . . he was an 'alien present' in the United States and was entitled to a bond hearing" under 8 U.S.C. § 1226. *Id.*; *see also* § 1101(a)(27)(J).

85. Moreover, as another court recently stressed, SIJS status "'bespeak[s] a substantial legal relationship between [SIJS beneficiaries] and the United States—a relationship far more significant than' the relationship possessed between an initial entrant into this country." *Del Cid Del Cid v. Bondi*, No. 3:25-CV-00304, 2025 WL 2985150, at *16 (W.D. Pa. Oct. 23, 2025). For these reasons, numerous other courts have agreed that SIJS beneficiaries— regardless of how they entered the United States—are detained under § 1226(a). *See Diaz-Calderon v. Barr*, No. 2:20-cv-11235-TGB, 2020 WL 5645191 at *11 (E.D. Mich. Sept. 22, 2020); *Duchi-Naula v. Tatum*, No. 1:25-cv-00247-LM-AJ, Doc. 17 (D.N.H. July 7, 2025); *Tocagon v. Moniz*, Case 1:25-cv0-12453-MJJ (D. Mass. Sept. 29, 2025); *Casun v. Hyde*, No. 25-CV-427-JJM-AEM, 2025 WL 2806769, at *2 (D.R.I. Oct. 2, 2025).

86. Third, Salvador's initial detention, as a UC, could not have been under § 1225(b)(2)(A) either. Instead, it was governed by the TVPRA, which requires UCs—even those who turn 18 and age out of ORR custody—to be placed in the "least restrictive setting available." 8 U.S.C. § 1232(c)(2)(B). This is entirely inconsistent with mandatory detention. Moreover, 8 C.F.R. § 236.3, "Processing, detention, and release of alien minors," notes that the custody of minors who are *not* UCs may be governed by either § 1225 or § 1226, *see* 8 C.F.R. § 236.3(j)(3), (4), but makes no indication that the custody of UCs can be governed by § 1225. Accordingly, numerous courts have found that noncitizens previously processed as UCs and subsequently re-detained, like Salvador, are not detained under § 1225(b)(2)(A). *See Lopez*, 2018 WL

2932726, at *6; R.D.T.M., 2025 WL 2686866, at *4; *Torres v. Wamsley*, No. C25-5772 TSZ, 2025 WL 2855379, at *3–5 (W.D. Wash. Oct. 8, 2025).

## CAUSES OF ACTION

### FIRST CLAIM

### Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution (Substantive Due Process)

87. Salvador repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

88. In order to satisfy the substantive due process requirements of the Fifth Amendment, a noncitizen's detention must be tied to some lawful purpose, which does not exist when the noncitizen cannot be removed and is not a flight risk or a danger to the community. *Zadvydas*, 533 U.S. at 690. Here, Salvador cannot be removed because he has a valid grant of deferred action, and he is neither a flight risk nor a danger to the community. Respondents' detention of Salvador is therefore unjustified and unlawful, in violation of his Constitutional right to Due Process under the Fifth Amendment. This necessitates his release at habeas.

### SECOND CLAIM

### Violation of the Due Process Clause of the Fifth Amendment to the United States Constitution (Procedural Due Process)

89. Salvador repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

90. The procedural due process guarantees of the Fifth Amendment ensure that noncitizens cannot be deprived of liberty or property interests without due process of law. *Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015) (quoting *Mathews*, 424 U.S. at 332). Here, the government made the reasoned decision to release Salvador shortly after his entry to the United States in

2021. It then dismissed his removal proceedings, granted him SIJS, and allowed him to live at liberty for the next three years. Respondents violated Salvador's right to procedural due process by re-arresting and detaining him on November 11, 2025, without providing adequate procedural protections before (or after) the resultant deprivation of his liberty. This independently requires his release at habeas to restore him to the status quo ante.

### THIRD CLAIM

**Violation of the Fourth Amendment to the U.S. Constitution,
8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.3(d)**

91. Salvador repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

92. At the time of Salvador's arrest and detention on November 11, 2025, he had been living at liberty pursuant to a release by federal immigration authorities on 11, 2021.

93. The government lacked reliable information of changed or exigent circumstances that would justify his arrest and detention after federal immigration authorities had already decided he could pursue his claims for immigration relief at liberty. His re-arrest based solely on the fact that he is subject to removal proceedings is unreasonable and violates the Fourth Amendment.

94. As Salvador was also arrested without a warrant despite the fact that no officer could have a reasonable belief that he was present in violation of the immigration laws and presented a risk of escape before a warrant could be obtained, there has been no probable cause hearing or custody review that could justify his detention since, and no emergency or extraordinary circumstances could excuse this, his arrest also violated the Fourth Amendment, 8 U.S.C. § 1357(a), and 8 C.F.R. § 287.3(d). As his arrest lacked a legal basis and there continues to be no legal basis for his detention, this requires his release at habeas.

## FOURTH CLAIM

## Ultra Vires Action

## Unlawful Detention

95. Salvador repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

96. At the time of Salvador's arrest and detention on November 11, 2025, he had been living at liberty pursuant to a release by federal immigration authorities in 2021.

97. At the time of Salvador's arrest and detention on November 11, 2025 there was no pending immigration removal proceedings.

98. As of the date of this filing, no new removal proceedings have been initiated against Salvador.

99. Respondents therefore have no lawful basis to subject Salvador to civil immigration detention.

100.    Respondent's arrest and detention of Petitioner is unlawful, should be set aside and this Court should enjoin the ultra-vires actions of the government.

## FIFTH CLAIM

## Violation of the INA and Implementing Regulations, 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(d)

101.    Salvador repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

102.    Respondents arrested Salvador without an administrative warrant or the reasonable belief that he would flee before a warrant could be obtained.

103.    Nor did Respondents make findings within 48 hours of arrest that Salvador is dangerous or a flight risk. No emergency or extraordinary circumstances justify this delay.

104.    As Salvador's arrest violated the INA and implementing regulations, his current detention is unlawful and he should be released at habeas.

## SIXTH CLAIM

### Violation of the APA, 5 U.S.C. §§ 702, 706

105.    Salvador repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition-Complaint as if fully set forth herein.

106.    Respondents' unilateral decision to arrest and detain Salvador on November 11, 2025, even though no circumstances had changed since its prior determination that he presented no risk of flight or danger, and even though he had an approved SIJS petition and an approved grant of deferred action, was also not in accordance with the Constitution, the INA, or its implementing regulations, and must also be set aside

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Petitioner respectfully requests that this Court:

a.    Assume jurisdiction over this matter;

b.    Enjoin the Respondents from transferring Petitioner away from the jurisdiction of this District pending these proceedings or, in the alternative, ordering Respondents to provide Petitioner's counsel 72-business hour's notice prior to any scheduled transfer;

c.    Declare that Petitioner's arrest and detention violates the Due Process Clause of the Fifth Amendment; the Fourth Amendment; and the INA and implementing regulations; and was ultra vires;

d.    Issue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner from custody without restraints on his liberty beyond those that existed prior to his unlawful re-detention;

e.   Order Respondents to show cause why the writ should not be granted within three

days, and set a hearing on this Petition within five days of the return, as required by

28 U.S.C. § 2243;

f.   Order that Respondents cannot re-detain Petitioner without a pre-deprivation hearing

before this Court where the government bears the burden of justifying re-detention

by clear and convincing evidence;

g.   Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice

Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

h.   Grant such further relief as this Court deems just and proper.


DATED:   November 14, 2025                     Respectfully Submitted,
         New York, New York

                                               */s/ Sarah T. Gillman*
                                               Sarah T. Gillman
                                               Director of Strategic U.S. Litigation
                                               ROBERT F. KENNEDY HUMAN RIGHTS
                                               88 Pine St., 8th Fl., Ste. 801
                                               New York, NY 10005
                                               T: (646)289-5593
                                               E: gillman@rfkhumanrights.org

                                               */s/ Sarah E. Decker*
                                               Sarah E. Decker
                                               Staff Attorney
                                               ROBERT F. KENNEDY HUMAN RIGHTS
                                               1300 19th Street NW, Ste. 750
                                               Washington, DC 20036
                                               T: (646) 289-5593
                                               E: decker@rfkhumanrights.org

                                               */s/ Kerry Q. Battenfeld*
                                               Kerry Q. Battenfeld, Esq.
                                               Litigation Coordinator
                                               PRISONERS' LEGAL SERVICES
                                               OF NEW YORK
                                               14 Lafayette Square, Suite 510

Buffalo, NY 14203
T: 716-367-7670
E: kbattenfeld@plsny.org

/s/ Stephanie E. Norton
Stephanie E. Norton*†
Senior Staff Attorney
NATIONAL IMMIGRATION PROJECT
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
T: (202) 217-4742
E: ellie@nipnlg.org

*Attorneys for Petitioner-Plaintiff*
\**Pro hac vice* application forthcoming
† Not admitted in DC; working remotely from
Wyoming and admitted in New York only

## 28 U.S.C. § 2242 VERIFICATION STATEMENT

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys.  I have discussed with the Petitioner the events described in this Petition and Complaint. On the basis of those discussions, I hereby verify that the statements made in this Petition and Complaint are true and correct to the best of my knowledge.

DATED:    November 14, 2025
          Buffalo, NY

*/s/ Kerry Q. Battenfeld*
Kerry Q. Battenfeld, Esq.
Litigation Coordinator
PRISONERS' LEGAL SERVICES
OF NEW YORK
14 Lafayette Square, Suite 510
Buffalo, NY 14203
T: 716-367-7670
E: kbattenfeld@plsny.org

*Attorney for Petitioner-Plaintiff*

JS 44   (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SALVADOR RAYMUNDO MATEO FRANCISCO

**(b)** County of Residence of First Listed Plaintiff    Genesee
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

see addendum

## DEFENDANTS

STEPHEN KURZDORFER, JOSEPH FREDEN, TODD LYONS, KRISTI NOEM, DEPT OF HOMELAND SECURITY, IMMIGRATION AND CUSTOMS ENFORCEMENT

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

U.S. Attorney's Office, Western District of New York, 138 Delaware Avenue, Buffalo, NY 14202

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
       Plaintiff
- [ ] 3   Federal Question
       *(U.S. Government Not a Party)*
- [x] 2   U.S. Government
       Defendant
- [ ] 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | **INTELLECTUAL** | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | | **LABOR** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | [ ] 710 Fair Labor Standards | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 720 Labor/Management | [ ] 862 Black Lung (923) | Exchange |
| | Medical Malpractice | | Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 751 Family and Medical | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [x] 463 Alien Detainee | Leave Act | | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | [ ] 791 Employee Retirement | [ ] 870 Taxes (U.S. Plaintiff | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | Income Security Act | or Defendant) | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party | Act/Review or Appeal of |
| | Employment | **Other:** | **IMMIGRATION** | 26 USC 7609 | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of |
| | Other | [ ] 550 Civil Rights | [ ] 465 Other Immigration | | State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | Actions | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1   Original
       Proceeding
- [ ] 2   Removed from
       State Court
- [ ] 3   Remanded from
       Appellate Court
- [ ] 4   Reinstated or
       Reopened
- [ ] 5   Transferred from
       Another District
       *(specify)*
- [ ] 6   Multidistrict
       Litigation -
       Transfer
- [ ] 8   Multidistrict
       Litigation -
       Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC § 2241

Brief description of cause:
Under the federal habeas statute, 28 USC § 2241, Petitioner challenges his immigration detention by the Respondents

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION**
       UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    [ ] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
11/14/2025

SIGNATURE OF ATTORNEY OF RECORD
/s/Kerry Q. Battenfeld

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)**

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions</u>.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**  **Requested in Complaint.**  Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

SALVADOR RAYMUNDO MATEO
FRANCISCO,

               *Petitioner,*

v.

STEPHEN KURZDORFER, in his official
capacity as Acting Field Office Director,
Buffalo Field Office, Enforcement and
Removal Operations, U.S. Immigration &
Customs Enforcement; JOSEPH FREDEN, in
his official capacity as Deputy Field Office
Director of the Buffalo Federal Detention
Facility; TODD LYONS, in his official
capacity as Acting Director U.S. Immigration
and Customs Enforcement; and KRISTI
NOEM, in her official capacity as U.S.
Secretary of Homeland Security;     U.S.
Department of Homeland Security; U.S.
Immigration and Customs Enforcement,

               *Respondents.*

**Civil Action No.:**

**Addendum to Civil Cover Sheet**

I(c) Plaintiff's Attorneys:

Kerry Q. Battenfeld
Prisoners' Legal Services of New York
14 Lafayette Sq. Ste. 510
Buffalo, NY 14203
T: (716) 844-8266
E: kbattenfeld@plsny.org

Sarah E. Decker
Staff Attorney
ROBERT F. KENNEDY HUMAN RIGHTS
1300 19th Street NW, Ste. 750
Washington, DC 20036
T: (646) 289-5593
E: decker@rfkhumanrights.org

Sarah T. Gillman
Director of Strategic U.S. Litigation
ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine St., 8th Fl., Ste. 801
New York, NY 10005
T: (646)289-5593
E: gillman@rfkhumanrights.org

Stephanie E. Norton*†
Senior Staff Attorney
NATIONAL IMMIGRATION PROJECT
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
T: (202) 217-4742
E: ellie@nipnlg.org

*Attorneys for Petitioner-Plaintiff*
**Pro hac vice* application forthcoming
† Not admitted in DC; working remotely from Wyoming and admitted in New York only

Allegations: Admits All | Charges: Concedes All
Designated Country: GUATEMALA |

## DEPARTMENT OF HOMELAND SECURITY
### NOTICE TO APPEAR

DOB: 06/20/2005

Event No: BUF2106000003

---

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Subject ID: 371131495

File No: 216 781 216

In the Matter of:

Respondent: SALVADOR RAYMUNDO MATEO FRANCISCO _____ currently residing at:

13986 RIDGE ROAD W Apt 2, ALBION, NEW YORK, 14411          (315) 878-5359

(Number, street, city, state and ZIP code)          (Area code and phone number)

☒ You are an arriving alien.

☐ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You a native of Guatemala and a citizen of Guatemala;

3. On February 5, 2021, you applied for admission into the United States at the Paso Del Norte Port of Entry in El Paso, Texas.

4. At that time, you did not possess or present a valid immigrant visa, reentry permit, border crossing identification card, or a valid document required by the Immigration and Nationality Act.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

   See Continuation Page Made a Part Hereof

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:      ☐ 8CFR 208.30      ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

130 Delaware Avenue ROOM 300 Buffalo NY 14202. EOIR Buffalo, NY

(Complete Address of Immigration Court, including Room Number, if any)

on  October 5, 2021  at      9:00 AM      to show why you should not be removed from the United States based on the

     (Date)          (Time)

charge(s) set forth above.          4384 KURZDORFER - SDDO

(Signature and Title of Issuing Officer) (Sign in ink)

Date:    June 1, 2021          BUFFALO, NEW YORK

(City and State)

EOIR - 1 of 5

Allegations: Admits All | Charges: Concedes All

Designated Country: GUATEMALA |

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at www.uscis.gov/i-589. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

### Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

_____
*(Signature of Respondent) (Sign in ink)*

Date: _____

_____
*(Signature and Title of Immigration Officer) (Sign in ink)*

### Certificate of Service

This Notice To Appear was served on the respondent by me on June 1, 2021 , in the following manner and in compliance with section 239(a)(1) of the Act.

☐ in person ☐ by certified mail, returned receipt # _____ requested ☒ by regular mail

☐ Attached is a credible fear worksheet. Serve on his Aust

☒ Attached is a list of organization and attorneys which provide free legal services. Nicolash Francisco Esloban

The alien was provided oral notice in the _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

GEORGE SCOTT - DO

_____
*(Signature of Respondent if Personally Served) (Sign in ink)*

_____
*(Signature and Title of officer) (Sign in ink)*

Allegations: Admits All | Charges: Concedes All

Designated Country: GUATEMALA ·|

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

Allegations: Admits All | Charges: Concedes All
Designated Country: GUATEMALA |

**U.S. Department of Homeland Security**          Continuation Page for Form __I-862__

| Alien's Name | File Number | Date |
|---|---|---|
| MATEO FRANCISCO, SALVADOR RAYMUNDO | 216 781 216 | 06/01/2021 |
| | Event No: BUF2106000003 | |

ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:

---------------------------------------------------------------------------------

---------------------------------------------------

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

| Signature | Title |
|---|---|
| 4384 KURZDORFER | SDDO |

Form I-831 Continuation Page (Rev. 08/01/07)

Exh. 1 - Adm.

Allegations: Admits All | Charges: Concedes All
Description:

**U.S. Department of Homeland Security**

Immigration and Customs Enforcement

**Notice to EOIR:  Alien Address**

---

| | |
|---|---|
| Date:  June 1, 2021 | File Number: A216 781 216 |

To:      Office of the Immigration Judge
          Executive Office for Immigration Review
          130 Delaware Avenue, Suite 410
          Buffalo, New York 14202

From:    Office of the Field Office Director
          Immigration and Customs Enforcement
          250 Delaware Avenue, Suite 700
          Buffalo, New York, 14202

Respondent: **Mateo Francisco, Salvador Raymundo**

---

**This is to notify you that this respondent is:**

☐ Currently incarcerated by other than ICE.  A charging document has been served on the respondent and an Immigration Detainer – Notice of Action by ICE (Form I-247) has been filed with the institution shown below.  He/she is incarcerated at:

☐ His/her anticipated release date is:

☐ Currently detained by ORR at:

Sheltered Hearts at Berkshire Farms

☐ Currently detained by ICE and transferred this date to a new location:

ICE motion for change of venue attached  ☐ **Yes**  ☐ **No**

☒ Released from ICE custody on the following condition(s):
    ☐ Personal recognizance
    ☐ Order of recognizance (Form I-220A)
    ☐ Bond in the amount of $    ☐ Surety Bond  ☐ Cash Bond
    ☒ Other: ORR Release, Released to Aunt Nicolasa Francisco Esteban

☒ Upon release from ICE custody, the respondent reported his/her address and telephone number will be:
In the care of his Aunt Nicolasa Francisco Esteban
**13986 Ridge Road W apt 2**
Albion, NY 14411 Phone: 315-878-5359

☒ Upon release from ICE custody, the respondent was reminded of the requirements contained in section 239(a)(1)(F)(ii) of the Immigration and Nationality Act and was provided with and EOIR change of address form (EOIR-33).

| | |
|---|---|
| | Deportation Officer |
| (Signature of INS Official) | (Title of INS Official) |
| George F. Scott | Buffalo, New York |
| (Printed Name of INS Official) | (Location) |

Exh. 1 - Adm.

# UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
### BUFFALO, NEW YORK

IN THE MATTER OF:          )
                                   )

MATEO FRANCISCO, SALVADOR   )
                                   )     **IN REMOVAL PROCEEDINGS**

A# 216 781 216                 )     **IJ Walter Ruehle**
                                   )     Next Hearing June 7, 2022

RESPONDENT                 )

## THE DEPARTMENT OF HOMELAND SECURITY'S
## MOTION TO DISMISS REMOVAL PROCEEDINGS WITHOUT PREJUDICE

**COMES NOW** The Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), appearing through its undersigned attorney, and states as follows:

1. The respondent is in removal proceedings pursuant to a Notice to Appear dated June 1, 2021. Upon information and belief, the respondent has a pending Form I-360. The respondent appears prima facie eligible to adjust status with USCIS once the Form I-360 is approved.

2. ICE respectfully requests, pursuant to its authority under 8 C.F.R. 239.2(c) as it relates to 8 C.F.R. 239.2(a)(7), that this Honorable Court dismiss removal proceedings without prejudice pursuant to authority under 8 C.F.R. 1239.2(c).

3. This motion does not prejudice the Respondent as the Respondent has agreed to the exercise of DHS' discretion and authority.

**WHEREFORE,** the DHS respectfully requests that this Honorable Court grant the Department's Motion to Dismiss Removal Proceeding without Prejudice.

Respectfully submitted this 29th day of March, 2022 by:

## BRANDI M LOHR
Digitally signed by BRANDI M LOHR
Date: 2022.03.29 14:22:03 -04'00'

Brandi M. Lohr
Assistant Chief Counsel
Department of Homeland Security
250 Delaware Avenue, Suite 773
Buffalo, New York 14202

<u>CERTIFICATE OF SERVICE</u>

On March 29, 2022, I served a copy of this Motion to Dismiss and any attached pages through the EOIR Courts and Appeals System (ECAS), which will automatically send service notifications to both parties that a new document has been filed.

Halinka Zolcik (respondent's accredited representative)
Prisoners Legal Services of New York
41 State Street, Suite M112
Albany, NY  12207

BRANDI M LOHR    Digitally signed by BRANDI M LOHR
Date: 2022.03.29 14:22:52 -04

_____
Brandi M. Lohr, Esq.
Assistant Chief Counsel

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT: BUFFALO, NEW YORK
-----------------------------------------------------------------------X
IN THE MATTER OF

MATEO FRANCISCO, SALVADOR

A# 216 781 216

IN REMOVAL PROCEEDINGS
-----------------------------------------------------------------------X

<u>ORDER OF THE IMMIGRATION JUDGE</u>

Upon consideration of the DHS Motion to Dismiss Without Prejudice, it is HEREBY

ORDERED that the motion be ☐ **GRANTED** ☐ **DENIED** because:

    ☐ DHS does not oppose the motion.
    ☐ The respondent does not oppose the motion.
    ☐ A response to the motion has not been filed with the court.
    ☐ Good cause has been established for the motion.
    ☐ The court agrees with the reasons stated in the opposition to the motion.
    ☐ The motion is untimely per _____.
    ☐ Other:

Deadlines:

    ☐ The application(s) for relief must be filed by _____.
    ☐ The respondent must comply with DHS biometrics instructions by _____.


                                _____

                                Immigration Judge
Dated:
       Buffalo, New York

---

Certificate of Service

This document was served by: ☐ Mail ☐ Personal Service
To: ☐ Alien ☐ Alien c/o Custodial Officer ☐ Alien's Atty/Rep ☐ DHS
Date: _____ By: Court Staff _____



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BUFFALO IMMIGRATION COURT**

Respondent Name:
MATEO FRANCISCO, SALVADOR
RAYMUNDO

To:

Zolcik, Halinka
41 State St. Ste. M112
Albany, NY 12207

A-Number:
 216781216

Riders:

In Removal Proceedings
Initiated by the Department of Homeland Security
Date:
03/30/2022

**ORDER OF THE IMMIGRATION JUDGE**

☐ Respondent   ☒ The Department of Homeland Security has filed the following motion in these proceedings: Motion to Dismiss Without Prejudice.

After considering the facts and circumstances, the motion is ☒ granted ☐ denied for the following reason(s):

Immigration Judge: Hochul, Denise  03/30/2022

Appeal:   Department of Homeland Security:   ☐ waived   ☐ reserved
          Respondent:   ☐ waived   ☐ reserved

Appeal Due:

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service

To: [   ] Noncitizen | [   ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS

By:  Sanchez, Teresa , Court Staff

Date:  03/30/2022



# THE UNITED STATES OF AMERICA

## I-797 | NOTICE OF ACTION | DEPARTMENT OF HOMELAND SECURITY
U.S. CITIZENSHIP AND IMMIGRATION SERVICES

| Receipt Number | Case Type |
|---|---|
| MSC2290352782 | I360 - PETITION FOR AMERASIAN, WIDOWER, OR SPECIAL IMMIGRANT |

| Received Date | Priority Date | Petitioner A216 781 216 |
|---|---|---|
| 03/17/2022 | 03/17/2022 | MATEO FRANCISCO, SALVADOR RAYMUNDO |

| Notice Date | Page | Beneficiary A216 781 216 |
|---|---|---|
| 12/06/2022 | 1 of 1 | MATEO FRANCISCO, SALVADOR RAYMUNDO |

SALVADOR RAYMUNDO MATEO FRANCISCO
c/o JAMES MILSTEIN
41 STATE STREET STE M112
ALBANY  NY  12207

Notice Type: Approval Notice
Class: SL6
Section: Special Immigrant-Juvenile

I-797 Approval Notice for Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant with Deferred Action.

USCIS has approved the above petition.

**Grant of Deferred Action:**

Your **Form I-360** petition has been approved, but you do not yet have a visa available to file an application for adjustment of status. USCIS has determined that you warrant a favorable exercise of discretion to receive deferred action. As a result, you have been placed in deferred action and you may be issued an employment authorization document. Deferred action is an act of administrative convenience to the government which gives some cases lower priority for removal from the United States for a specified period of time.

Your grant of deferred action will remain in effect for a period of four years from the date of this notice unless terminated earlier by USCIS.

Pursuant to 8 CFR Sec. 274a.12(c)(14), a noncitizen with approved deferred action is eligible to apply for employment authorization with the appropriate fee. If you would like to apply for employment authorization, you must properly file Form I-765, Application for Employment Authorization, and enter eligibility category (c)(14). You will receive separate correspondence regarding the adjudication of your Form I-765 once it is filed.

If you are represented by an attorney, all further correspondence should be accompanied by Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative.

USCIS will notify you separately about any other cases you have filed.

**This form is not a visa, nor may you use it in place of a visa.**

**This form does not constitute employment authorization, nor may you use it in place of an Employment Authorization Document.**

Please see the additional information on the back. You will be notified separately about any other cases you filed.
USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

National Benefits Center
U.S. CITIZENSHIP  IMMIGRATION SVC
P.O. Box 648003
Lee's Summit MO 64002



USCIS Contact Center: www.uscis.gov/contactcenter



# UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT

| | |
|---|---|
| Respondent Name: | A-Number: |
| MATEO FRANCISCO, SALVADOR RAYMUNDO | 216-781-216 |
| Address: | REJECTION NOTICE |
| 13986 RIDGE RD WEST, APT 2 | |
| ALBION, NY 14411 | Date: 11/13/2025 |

### REJECTED FILING
### NOTICE TO ATTORNEY OR REPRESENTATIVE

This notice is to inform you that the document(s) received by the Immigration Court on __11/13/2025__ is/are being rejected for the reasons given below.  When re-filing the corrected document(s) other than initiation documents, please attach this rejection notice. A copy of the corrected filing must also be served on the opposing party.

Document(s) being rejected:
 216-781-216 I-830 BUF to BTV.pdf

Rejection Reason(s)
 1. No Pending Case

Rejection Explanation:

### Certificate of Service

This document was served:
Via: [   ] Mail  [   ] Personal Service  [x  ] Electronic Service
To: [x  ] Alien  [   ] Alien c/o custodial officer  [   ] Alien's atty/rep. [x  ] DHS
By: __WestmilJ_____, [   ] Court Staff [   ] Immigration Judge
Date: __11/13/2025_____